UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

SAFRAZ KHAN,

      Petitioner,

v().                                     Case No: 2:13-cv-638-FtM-29MRM

STUART WHIDDON, in his official capacity as Sheriff, Glades County (FL), MARC J. MOORE, in his official capacity as Field Office Director of U.S. Immigration and Customs Enforcement Miami Field Office, JOHN SANDWEG, in his official capacity as Director of U.S. Immigration and Customs Enforcement, JANET NAPOLITANO, in her official capacity as Secretary of Homeland Security, ERIC HOLDER, in his official capacity as Attorney General of the United States, UNITED STATES DEPARTMENT OF JUSTICE, and U.S. DEPARTMENT OF HOMELAND SECURITY,

      Respondents.

_____

**OPINION AND ORDER**

This matter comes before the Court upon review of petitioner Safraz Kahn's Petition for a writ of habeas corpus (Doc. #1) brought pursuant to 28 U.S.C. § 2241 on September 4, 2013. Petitioner is challenging his mandatory detention pursuant to 8

U.S.C. § 1226(c) and seeking an individualized bond hearing. Respondent[1] filed a Response incorporating a motion to dismiss (Doc. #21) on December 6, 2013. Petitioner filed a Reply (Doc. #23) on December 27, 2013. This matter is ripe for review.

**I.**

Petitioner is a native and citizen of Guyana who entered the United States as a lawful permanent resident on May 15, 1992. (Doc. #21-9.) On January 25, 2007, petitioner was charged with Count I: Attempted Lewd or Lascivious Battery, in violation of Fla. Stat. §§ 777.04 and 800.04(4)(a); Count II: Computer Pornography and Child Exploitation, in violation of Fla. Stat. § 847.0135(3); and Count III: Transmission of Harmful Material to a Minor, in violation of Fla. Stat. § 847.0138(2). (Doc. #21-2.) On March 11, 2008, petitioner entered a plea of *nolo contendere,* and the criminal court adjudicated him guilty and sentenced him to

---

[1] Petitioner named several respondents. (See Doc. #1.) Rule 2(a) of the Rules Governing Section 2254 Cases in United States District Courts, which also applies to cases filed under § 2241, provides that applicants in "present custody" seeking habeas relief should name "the state officer having custody of the applicant as respondent." The Supreme Court has made clear that there "is generally only one proper respondent to a given prisoner's habeas petition." Rumsfield v. Padilla, 542 U.S. 426, 435 (2004). This is "'the person with the ability to produce the prisoner's body before the habeas court.'" Id. at 435-436. In this case, the Glades County Sheriff, Stuart Whiddon, is petitioner's immediate custodian considering petitioner is being held at the Glades County Detention Center. All other named respondents will be dismissed from this action.

a term of imprisonment of one year and three months. (Doc. #21-3.) The Court also declared petitioner to be a sexual offender and ordered him to serve five years of Sex Offender Probation after he was released from criminal incarceration. (Doc. #21-4; Doc. #21-5.) Petitioner was released by state officials on March 31, 2009. (Doc. #1, ¶ 30.)

Immigration and Customs Enforcement ("ICE") officers arrested and detained petitioner on March 25, 2012, during a routine reporting appointment at his probation office. (Doc. #21-7; Doc. #1, ¶ 2.) Petitioner was served a Notice of Custody Determination, advising him that he was being mandatorily detained during removal proceedings. The Department of Homeland Security ("DHS") served petitioner a Notice to Appear ("NTA") charging him with removability under 8 U.S.C. § 1227(a)(2)(A)(iii). (Doc. #21-7.) Petitioner was initially detained at Krome Service Process Center in Miami, Florida, and subsequently transferred to the Glades County Detention Center in Moore Haven, Florida. (Doc. #1, ¶¶ 20, 30.) On September 9, 2013, the Immigration Court sustained the charge that petitioner is an aggravated felon and removable under 8 U.S.C. § 1227(a)(2)(A)(iii). (Doc. #21-10.)

On April 16, 2013, and April 23, 2013, petitioner appeared before the Miami Immigration Court requesting a custody redetermination. (Doc. #2-2.) On May 28, 2013, the Immigration

Court denied petitioner's request for a custody redetermination concluding that petitioner's conviction of an aggravated felony subjects him to detention under 8 U.S.C. § 1226(c) without bond during the pendency of removal proceedings. (Id.) The Board of Immigration Appeals affirmed the Immigration Court's decision denying bond. (Doc. #2-3.)

Petitioner filed an application for u-visa nonimmigrant status with U.S. Citizenship and Immigration Services ("USCIS"). (Doc. #2-6.) The Immigration Court administratively closed petitioner's removal proceedings pending the adjudication of his u-visa application. (Doc. #2-7.) Petitioner's u-visa application was denied on August 26, 2013. (Doc. #2-8.)

On September 4, 2013, petitioner filed the instant Petition challenging his detention pursuant to 8 U.S.C. § 1226(c)[2] and seeking an individualized bond hearing. (Doc. #1.) Respondent filed a response in opposition to the Petition. (Doc. #21.) Petitioner filed a reply. (Doc. #23.)

---

[2] The Court recognizes that on January 28, 2015, Congress proposed amendments to 8 U.S.C. § 1226. One of those amendments removes subsection (e) of § 1226, entitled "Judicial Review." This subsection tried to limit judicial review of the Attorney General's discretionary judgment regarding the application of this statute. Nevertheless, the United States Supreme Court recognized in Demore v. United States, that subsection (e) does not deprive the federal courts of jurisdiction when a petitioner challenges the constitutionality of his/her detention under § 1226(c). Demore, 538 U.S. 510, 517 (2003).

Petitioner challenges his mandatory detention as unlawful and the duration of his detention as unconstitutional. Petitioner seeks immediate release or in the alternative, a constitutionally adequate bond hearing which respondent bears the burden of establishing that petitioner's continued detention is justified.

Since filing the instant Petition, petitioner has been ordered removed. (Doc. #26-1.) On March 23, 2015, petitioner appealed the decision to the Board of Immigration Appeals. (Doc. #26.) As of the date on this Order, the appeal remains pending. (Id.)

**II.**

Petitioner's detention is governed by 8 U.S.C. § 1226. Although § 1226(a) permits the Attorney General to release an alien on bond in the exercise of his discretion, § 1226(c) directs the Secretary to take into custody any alien who is removable from the United States because he has been convicted of at least one of a specified set of crimes. Specifically, § 1226(c)(1) states:

> The Attorney General shall take into custody any alien who—
>
> (A)  is inadmissible by reason of having committed any offense covered in section 1182 (a)(2) of this title,
>
> (B)  is deportable by reason of having committed any offense covered in section

        1227 (a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title,[3]

  (C)  is deportable under section 1227 (a)(2)(A)(i) of this title on the basis of an offense for which the alien has been sentenced to a term of imprisonment of at least 1 year, or

  (D)  is inadmissible under section 1182 (a)(3)(B) of this title or deportable

---

[3] 28 U.S.C. § 1227(a)(2)(A) defines general crimes, in pertinent part, as follows:

  (A) General crimes

  (i) Crimes of moral turpitude Any alien who—

    (I) is convicted of a crime involving moral turpitude committed within five years (or 10 years in the case of an alien provided lawful permanent resident status under section 1255 (j) of this title) after the date of admission, and

    (II) is convicted of a crime for which a sentence of one year or longer may be imposed,

is deportable.

(ii) Multiple criminal convictions
Any alien who at any time after admission is convicted of two or more crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct, regardless of whether confined therefor and regardless of whether the convictions were in a single trial, is deportable.

(iii) Aggravated felony
any alien who is convicted of an aggravated felony at any time after admission is deportable.

>>under section 1227 (a)(4)(B) of this title,
>
>when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.

8 U.C.C. § 1226(c)(1). While § 1226(a) allows for release on bond, § 1226(c) only allows for release of a criminal alien if the Secretary deems the release necessary for witness protection purposes. See 18 U.S.C. § 1226(c)(2). Further, the United States Supreme Court has held that brief mandatory, pre-removal detention pursuant to 8 U.S.C. § 1226(c)(1)(B) does not violate due process. See Demore v. Kim, 538 U.S. 510, 523-24 (2003) (holding that mandatory detention of permanent resident aliens without an individualized bail hearing did not violate the Due Process Clause).

**A. Petitioner is subject to detention under 8 U.S.C. § 1226(c)(1)**

Petitioner contends that he is not subject to mandatory detention under § 1226(c) because he was not taken into immigration custody immediately after his release from criminal custody. Specifically, petitioner reads § 1226(c) to require respondent to detain an alien as soon as the alien is released from custody. Petitioner contends that mandatory detention under § 1226(c) does not apply to him because ICE did not detain him until almost three

years after he was released from physical custody. Petitioner asserts that unless the Government detains an alien immediately after his release, the Government forfeits its authority to exercise mandatory detention under § 1226(c).

As an initial matter, the Court notes that petitioner was still serving out his sentence of probation when he was taken into ICE custody. The BIA has held that an alien who did not serve prison time and was apprehended from his home while on probation was subject to mandatory detention under § 1226(c). See Matter of Kotliar, 24 I. & N. Dec. 124, 125 (BIA 2007). Likewise, the Third Circuit rejected the argument that an alien is not subject to mandatory detention when he is sentenced only to probation. See Desrosiers v. Hendricks, 532 F. App'x 283, 285 (3d Cir. 2013) (holding that the language in § 1226(c) "clearly contemplates convictions resulting in probationary sentences"). The Second Circuit reached the same conclusion. See Lora v. Shanahan, 804 F.3d 601, 610 (2d Cir. 2015) (holding that "an alien who has been convicted of a qualifying crime under § 1226(c) is subject to mandatory immigration detention, whether he is sentenced to a prison term or to probation"). The Court finds the interpretation of the Second and Third Circuits persuasive. Therefore, because petitioner was still serving out his sentence of probation at the

time he was taken into ICE custody, petitioner's first argument is without merit.

Furthermore, although the Eleventh Circuit has not yet considered this issue, the Second, Third, Fourth, and Tenth Circuits have held that § 1226(c) applies even when the Government does not detain the alien immediately after his release from custody. See Gjergji v. Johnson, No. 3:15-CV-1217-J-34MCR, 2016 WL 3552718, at *3 (M.D. Fla. June 30, 2016); see also Lora, 804 F.3d at 613 (stating that "we join the Third, Fourth, and Tenth Circuits in holding that DHS retains its authority and duty to detain an alien even if not exercised immediately upon the alien's release"); Olmos v. Holder, 780 F.3d 1313, 1324 (10th Cir. 2015); Sylvain v. Att'y Gen. of the United States, 714 F.3d 150, 156-57 (3d Cir. 2013); Hosh v. Lucero, 680 F.3d 375, 381 (4th Cir. 2012).

After applying the two-step Chevron[4] inquiry to evaluate the BIA's interpretation of § 1226(c), the Second Circuit concluded that "an alien may be subject to mandatory detention even where DHS does not immediately detain the alien after release from criminal custody." See Lora, 804 F.3d at 610-13. The Fourth Circuit similarly held the BIA's interpretation of § 1226(c), that an alien need not be taken into ICE custody immediately after

---

[4] Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837 (1984).

release from state custody to be subject to mandatory detention, should be given deference. Hosh, 680 F.3d at 380 (citing In re Rojas, 23 I. & N. Dec. 117 (BIA 2001)). Also, the Third Circuit in Sylvain explained that "[e]ven if the statute calls for detention 'when the alien is released,' and even if 'when' implies a short time frame, nothing in the statute suggests that officials lose authority if they delay." Sylvain, 714 F.3d at 157.

Although, one-half of an equally-divided en banc panel of the First Circuit Court of Appeals reached the opposite conclusion, see Castaneda v. Souza, 810 F.3d 15 (1st Cir. 2015) (en banc), the Court is persuaded by the reasoning set forth by the Second, Third, Fourth and Tenth Circuits. Accordingly, petitioner is not entitled to habeas relief based on ICE's delay in taking him into custody.

**B. The length of petitioner's pre-removal detention is unreasonable**

Petitioner also contends that his prolonged mandatory detention under § 1226(c) without a bond hearing violates his due process rights under the United States Constitution. Petitioner argues that because he has been detained for over six months and deportation is an unlikely result of his immigration proceedings, he is entitled to a bond hearing to determine whether his continued detention is necessary.

Title 8 U.S.C. § 1226 authorizes the Government to detain aliens during removal proceedings. Specifically, subsection (a) of § 1226 provides for the arrest and detention of an alien "pending a decision on whether the alien is to be removed from the United States," and subsection (c) "requires the Attorney General to take criminal aliens into custody 'when released' from criminal custody and only permits the release of such aliens for limited witness protection purposes." Reid v. Donelan, 819 F.3d 486, 493 (1st Cir. 2016) (footnotes omitted).

In Demore v. Kim, 538 U.S. 510 (2003), the United States Supreme Court considered the constitutionality of § 1226(c)'s mandatory detention scheme. Upholding its constitutionality, the Court determined that "Congress, justifiably concerned that deportable criminal aliens who are not detained continue to engage in crime and fail to appear for their removal hearings in large numbers, may require that [certain aliens] be detained for the brief period necessary for their removal proceedings." Id. at 513. In reaching this conclusion, "the Supreme Court emphasized that the purpose of the mandatory detention in § 1226(c) is to prevent deportable criminal aliens from absconding and from committing more crimes before they are removed." Sopo v. U.S. Attorney Gen., 825 F.3d 1199 (11th Cir. 2016) (citing Demore, 538 U.S. at 518-20, 527-28). However, "[w]hile Demore upheld §

1226(c)'s provision mandating detention of criminal aliens during removal proceedings, it did so with a strong constitutional caveat about due process concerns as to continued mandatory detention where the duration of the removal proceedings is unreasonably long or delayed." Id.

On June 15, 2016, the Eleventh Circuit held that § 1226(c) contains "an implicit temporal limitation at which point the government must provide an individualized bond hearing to detained criminal aliens whose removal proceedings have become unreasonably prolonged." Id.; see Gjergji v. Johnson, No. 3:15-CV-1217-J-34MCR, 2016 WL 3552718, at *6 (M.D. Fla. June 30, 2016). The Court went on to adopt the case-by-case approach espoused by the First, Third, and Sixth Circuits, explaining that "'[r]easonableness, by its very nature, is a fact-dependent inquiry requiring an assessment of all of the circumstances of any given case.'" Sopo, 825 F.3d at 1215.

The Court further explained, "several factors should guide a district court in determining whether a particular criminal alien's continued detention, as required by § 1226(c), is necessary to fulfilling Congress's aims of removing criminal aliens while preventing flight and recidivism." Id. at 1217-18. The factors set out by the Court for consideration are: (1) the amount of time that the criminal alien has been in detention without a bond

hearing; (2) why the removal proceedings have become protracted; (3) whether it will be possible to remove the criminal alien after there is a final order of removal; (4) whether the alien's civil immigration detention exceeds the time the alien spent in prison for the crime that rendered him removable; and (5) whether the facility for the civil immigration detention is meaningfully different from a penal institution for criminal detention. Id. The Eleventh Circuit emphasized, however, that its list of factors is not exhaustive, and that facts considered by the district court will necessarily depend on the individual circumstances in each case. Id. (citation and quotation omitted).

Applying the Sopo factors to this case, the Court concludes that petitioner's continued detention without an opportunity to argue for bond is unreasonable.

### 1. The amount of time that the criminal alien has been in detention without a bond hearing

As to the first factor, petitioner has been in detention under § 1226(c) since March 25, 2012. That is nearly four and half years. The record shows petitioner's request for bond was denied by the Immigration Judge on May 28, 2013. (Doc. #2-2.) The Board of Immigration Appeals affirmed that decision on August 20, 2013. (Doc. #2-3.) Petitioner filed a second request for a bond hearing with the Immigration Judge after his case was administratively

closed, but that request was also denied. (Doc. #2-4.) There is no evidence petitioner has received a bond hearing or custody redetermination since filing the instant petition. Furthermore, respondent has made no attempt to explain or justify petitioner's nearly four and a half year pre-removal detention.

Petitioner's detention greatly exceeds the brief detention contemplated by the Court in Demore. The First and Third Circuits have held that lesser periods of detention are unreasonable. See Reid, 819 F.3d at 501 (fourteen months); Chavez-Alvarez v. Warden York Cty. Prison, 783 F.3d 469, 478 (3d Cir. 2015) (one year); see also Ly v. Hansen, 351 F.3d 263, 271 (6th Cir. 2003) (eighteen months); Gjergji v. Johnson, No. 3:15-CV-1217-J-34MCR, 2016 WL 3552718, at *7 (M.D. Fla. June 30, 2016) (eighteen months). "The need for a bond inquiry is likely to arise in the six-month to one-year window, at which time a court must determine whether the purposes of the statute — preventing flight and criminal acts — are being fulfilled, and whether the government is incarcerating the alien for reasons other than risk of flight or dangerousness." Sopo, 825 F.3d at 1217 (citing Demore, 538 U.S. at 532-33 (Kennedy, J., concurring)). "The government is not required to free automatically a criminal alien who obtains a bond hearing; but the government must at least afford the alien an individualized bond inquiry." Id. Accordingly, the Court finds that the first factor

weighs in favor of granting petitioner a bond hearing in this matter.

### 2. Why the removal proceedings have become protracted

Next, the Court must consider "whether the government or the criminal alien have failed to participate actively in the removal proceedings or sought continuances and filing extensions that delayed the case's progress." Id. In this case, there is no evidence that either party was the cause of delay. Nothing suggests petitioner unnecessarily sought continuances or appeals for the purpose of delaying the proceedings. Although petitioner has filed appeals and sought various forms of relief, such filings are to be expected as a natural part of the process. "An alien who would not normally be subject to indefinite detention cannot be so detained merely because he seeks to explore avenues of relief that the law makes available to him." Ly, 351 F.3d at 272.

In addition, the delays in this case cannot be attributed solely to petitioner; to the contrary, petitioner appealed the order of removal on March 23, 2015, and the request has been pending for over a year. At this point it is impossible to determine when the litigation in this case will conclude. Therefore, because the Court concludes that petitioner did not act in bad faith by purposely delaying the removal proceedings, the Court is not precluded from granting a bond hearing.

### 3. Whether it will be possible to remove the criminal alien after there is a final order of removal

Petitioner asserts that his detention is ongoing and removal is an unlikely outcome. Respondent asserts petitioner's detention "has a definite endpoint --- when [he] is ordered removed. (Doc. #21, p. 24.) "The goal of pre-removal incarceration must be to ensure the ability of the government to make a final deportation . . . The actual removability of a criminal alien therefore has bearing on the reasonableness of his detention prior to removal proceedings." Ly, 351 F.3d at 271 (citing Zadvydas, 533 U.S. at 690).

The record shows that while the instant Petition was pending, the Immigration Court ordered petitioner removed to his native Guyana. (Doc. #26.) Petitioner's appeal to the Board of Immigration Appeals remains pending. (Id.) Based on the findings of the Immigration Court, it appears that petitioner's deportation is likely. However, even assuming that there is a high likelihood that petitioner's appeal will result in removal, this factor standing alone does not supersede the other factors that weigh in petitioner's favor. See Chairez-Castrejon v. Bible, No. 2:15-CV-825-JNP-EJF, 2016 WL 2939147, at *8 (D. Utah May 19, 2016).

### 4. Whether the alien's civil immigration detention exceeds the time the alien spent in prison for the crime that rendered him removable

On March 11, 2008, the criminal court found petitioner guilty and sentenced him to a term of imprisonment of one year and three months and five years of Sex Offender Probation.  (Doc. #21-3; Doc. #21-4; Doc. #21-5.).  Petitioner has been detained by DHS since March 25, 2012.  (Doc. #21-7.)  Petitioner has been in pre-removal proceedings for nearly four and a half years – over three times longer than his initial prison sentence and far longer than the outside limit of five months contemplated by <u>Demore</u> for a criminal alien who chooses to appeal his order of removal.  538 U.S. at 529-31.  Accordingly, the Court finds this factor weighs in favor of granting petitioner a bond hearing.

> **5. Whether the facility for the civil immigration detention is meaningfully different from a penal institution for criminal detention.**

Petitioner is currently confined at the Glades County Detention Center in Moore Haven, Florida.  (Doc. #1, ¶ 2.)  This facility is under the direct authority of the Glades County Sheriff and is used to detain individuals who have been arrested for committing crimes.[5]  Petitioner's civil immigration detention does not appear to be meaningfully different from criminal detention in a penal institution.  "[M]erely calling a confinement 'civil detention' does not, of itself, meaningfully differentiate it from

---

[5] Glades County Sheriff's Office, http://www.gladessheriff.org/?page=95824&pageid=5

penal measures." See Chavez-Alvarez, 783 F.3d at 478 (citations omitted). The Third Circuit explained that "[a]s the length of the detention grows, the weight given to this aspect of his detention increases." Id. Petitioner has been detained in the Glades County Detention Center for nearly four and a half years. Therefore, the Court finds that this factor weighs in favor of granting petitioner a bond hearing.

### III.

After weighing all the factors, the Court concludes that petitioner is entitled to a bond hearing. Based on the analysis above, the Court finds that petitioner's current "detention without further inquiry into whether it [is] necessary to ensure his appearance at the removal proceedings or to prevent a risk of danger to the community, [is] unreasonable and, therefore, a violation of the Due Process Clause." Sopo, 825 F.3d at 1201 (citing Diop, 656 F.3d at 234-35). As such, the Court will grant the Petition in part and order respondent to hold an individualized bond hearing. However, pursuant to Sopo, petitioner will bear the burden of proof and must show that he is not a flight risk or danger to others. Id.

ACCORDINGLY, it is hereby

**ORDERED:**

1. Respondents Eric Holder, Janet Napolitano, Marc J. Moore, John Sandweg, U.S. Department of Justice and U.S. Department of Homeland Security are **DISMISSED** from this action as improper respondents.

2. Petitioner's 28 U.S.C. § 2241 petition for writ of habeas corpus is conditionally **GRANTED** to the extent set forth herein.

3. Respondent is **ORDERED** to grant petitioner an individualized bond inquiry within **THIRTY (30) DAYS** from the date on this Order. Respondent shall report to this Court within **TEN (10) DAYS** following the bond hearing regarding compliance with this Order. The report shall include notification as to the outcome of the bond hearing.

4. The **Clerk of Court** is directed to terminate any pending motions and close this case.

**DONE** and **ORDERED** in Fort Myers, Florida on this __7th__ day of September, 2016.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE


SA: ftmp-2
Copies: All Parties of Record